UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:19CV-00472-RSE

LORI ANN IKNER                                                    PLAINTIFF

VS.

ANDREW M. SAUL,
*Commissioner of Social Security*                                DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Lori Ann Ikner's applications for disability insurance benefits and supplemental security income benefits. Ikner seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Both Ikner (DN 22) and the Commissioner (DN 27) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 15).

### Findings of Fact

Lori Ann Ikner is 49 years old, has an eighth-grade education, and lives with her boyfriend and his children. (Tr. 867-69). She hasn't worked since 2009 when she quit her job cleaning offices to move out of town. (Tr. 868-69). She has a history of using methamphetamine but has been sober since 2015. (Tr. 866-67).

Ikner sees a counselor every two weeks and a psychiatrist every three months for her panic attacks, nightmares, and crying spells. (Tr. 856-57). She doesn't go out often but visits her

"mamaw" next door and sometimes goes to stores where she knows there won't be many people. (Tr. 857-58). Her boyfriend cooks most of the time and helps her get in and out of the bathtub. (Tr. 859). She attributes many of her limitations to her hands shaking, which she claims is the result of nerve damage. (Tr. 860). Being nervous allegedly increases her tremors. (Tr. 860-61). She only drives occasionally, depending on how shaky she is that day. (Tr. 862).

Ikner applied for disability insurance benefits ("DIB") under Title II and supplemental security income benefits ("SSI") under Title XVI, claiming she became disabled on March 1, 2014 (Tr. 205), as a result of anxiety, depression, PTSD, and nerve damage in her left arm (Tr. 264). Her applications were denied initially (Tr. 50, 61) and again on reconsideration (Tr. 75, 88). Administrative Law Judge Mattie Harvin-Woode ("ALJ Harvin-Woode") conducted a hearing in St. Louis, Missouri, on July 26, 2018. (Tr. 859). Ikner attended the hearing by video from Elizabethtown, Kentucky, with her representative. (*Id.*). An impartial vocational expert also testified at the hearing. (*Id.*). At the beginning of the hearing, Ikner amended her onset of disability date to January 4, 2016 and, as a result, withdrew her Title II DIB claim. (Tr. 853-54).

ALJ Harvin-Woode issued an unfavorable decision on September 19, 2018. (Tr. 30). ALJ Harvin-Woode applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Ikner has not engaged in substantial gainful activity since March 31, 2014. (Tr. 19). Second, Ikner has the severe impairments of:

> generalized anxiety disorder, major depressive disorder, post-traumatic stress disorder (PTSD), dependent personality disorder, biceps tendonitis of the right upper extremity, complete tear of the right rotator cuff, right shoulder subacromial impingement, right shoulder AC joint arthropathy, status post rotator cuff repair and decompression, median neuropathy of the bilateral upper extremities, status post left forearm injury, lesion of bilateral ulnar nerves, chronic obstructive pulmonary disease, gastroesophageal reflux disease (GERD), irritable bowel syndrome, hypertension, and essential tremor.

2

(*Id.*). Third, none of Ikner's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 20). Between the third and fourth steps, ALJ Harvin-Woode found Ikner has the residual functional capacity to perform "light work" with the following limitations:

> She should not climb ladders, ropes, and scaffolds. She can occasionally reach overhead with the right upper extremity, but can frequently reach in all other directions with the right upper extremity. She can frequently, but not repetitively, handle and finger with the bilateral upper extremities. She retains the capacity for simple, routine tasks. She is limited to occasional interaction with coworkers that is brief in nature. She should not interact with the general public. She can tolerate ordinary work pressure, but would need to avoid excessive workloads of high quotas, quick decision-making, rapid changes in work tasks, multiple demands, or sustained customer service interaction.

(Tr. 22). Fourth, Ikner is unable to perform any past relevant work. (Tr.28). Fifth and finally, considering Ikner's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (Tr. 29).

Based on this evaluation, ALJ Harvin-Woode concluded that Ikner was not disabled, as defined in the Social Security Act, from March 1, 2014 through the date of the decision. (Tr. 30). Ikner appealed ALJ Harvin-Woode's decision. (Tr. 202). The Appeals Council declined review. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Ikner sought judicial review from this Court. (DN 1).

Conclusions of Law

A. Standard of Review

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an

inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

## B. Analysis

### 1. Consultative Opinion of J. Lorilea Conyer, M.A., L.P.P.

First, Ikner claims the RFC determination is not supported by substantial evidence because ALJ Harvin-Woode afforded only little weight to the opinion of consultative examiner J. Lorilea Conyer. The residual functional capacity finding is the ALJ's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The ALJ bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ is required to consider every medical opinion in a claimant's case record. 20 C.F.R. 404.1527(b); *see also Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

The regulations establish a hierarchy of acceptable medical source opinions. *Hollon v. Comm'r of Soc. Sec.*, 142 F. Supp. 3d 577, 582 (S.D. Ohio 2015). Opinions from non-treating sources are never assessed for controlling weight; instead, they are evaluated using the factors set

4

forth in 20 C.F.R. § 416.927(c). *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir.

2013) (citing 20 C.F.R. § 404.1527(c)). These factors include the examining relationship (or lack

thereof), specialization of the physician, consistency of the medical opinion with the record, and

supportability of the opinion. 20 C.F.R § 416.927(c)(1)-(6). An exhaustive factor-by-factor

analysis not required to satisfy the rule. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802,

804 (6th Cir. 2011). Opinions from one-time consultative examiners are not due any special degree

of deference. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also*, *Tucker v. Comm'r of*

*Soc. Sec.*, -- F. App'x --, 2019 WL 2418995, at *5 (6th Cir. June 10, 2019) (citations omitted).

J. Lorilea Conyer ("Conyer") performed a one-time consultative psychological exam on

Ikner on February 23, 2016. (Tr. 495). Conyer made the following findings about Ikner's

functional capacities:

> 1. [Ikner's] capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks appears affected by these impairments to a moderate degree.
>
> 2. Her ability to tolerate stress and pressure of day to day employment appears affected by these impairments to a moderate degree.
>
> 3. Her ability to sustain attention and concentration towards performance of simple repetitive tasks appears affected by these impairments to a slight degree.
>
> 4. Her capacity to respond appropriately to supervisors and coworkers in a work setting appears affected by these impairments to a slight degree.

(Tr. 497-98). ALJ Harvin-Woode assigned this opinion "little weight" in her RFC determination

because she found Conyer's limitations on Ikner's functioning were "generally inconsistent with

the evidence." ALJ Harvin-Woode pointed to evidence of Ikner's memory being intact, Ikner's

ability to perform basic computations and apply abstract reasoning, Ikner's normal attention span

and ability to concentrate, and appropriate judgment and insight. (Tr. 27 (citing Exs. 9F; 13F;

14F)).

Ikner argues that ALJ Harvin-Woode's assessment ignores large parts of the allegedly inconsistent treatment records. (DN 22-1, at p. 10). For instance, treatment notes from Communicare frequently noted Ikner's "intact memory" but contemporaneously noted her obsessive thought content, abnormal mood, distressed appearance, agitated behaviors, etc. (*Id.* (citing Tr. 543, 554, 557-58, 567, 576, 585, 591, 601). Ikner similarly believes ALJ Harvin-Woode "cherry-picked" from her neurology notes by highlighting those indicating her normal attention span and ability to concentrate and her appropriate judgment and insight but ignoring those stating her mood and affect were "very anxious, shaking." (*Id.* (citing Tr. 643, 647, 661, 665, 669, 673)). ALJ Harvin-Woode's citations to this selected evidence, Ikner asserts, do not provide legitimate grounds to afford Conyer's opinion less weight. Ikner also claims it is unclear how the evidence ALJ Harvin-Woode cited to has any bearing on Ikner's ability to tolerate the stress of day-to-day employment. (*Id.* at p. 12).

Although ALJ Harvin-Woode only briefly cited to Ikner's inconsistent treatment records in discounting Conyer's opinion, she wholly considered these medical records elsewhere in her analysis. Earlier in her RFC determination, ALJ Harvin-Woode noted that records from Communicare on occasion revealed Ikner's abnormal mood, abnormal attention and concentration, limited insight and poor judgment, and impaired memory. (Tr. 25 (citing Ex. 9F)). Similarly, ALJ Harvin-Woode highlighted treatment notes from Ikner's neurologist demonstrating an anxious mood and affect. In discussing these treatment records, ALJ Harvin-Woode did not "cherry-pick" evidence unfavorable to a finding of disability but instead comprehensively discussed how Ikner presented on exam.

Again, an ALJ's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230,

1233 (6th Cir. 1993). While there might be evidence in the record that was discussed in ALJ Harvin-Woode's RFC determination that would support an opposite conclusion, the ALJ thoroughly considered Ikner's treatment records and did not cherry-pick evidence to match her opined limitations. In discussing how Conyer's limitations were generally inconsistent with the evidence, ALJ Harvin-Woode fulfilled her obligation under regulations. Substantial evidence supports assigning little weight to Conyer's opinion.

## 2. Development of the Record

Ikner also alleges that ALJ Harvin-Woode failed to update the physical opinion evidence despite knowing that Ikner underwent shoulder surgery in June of 2018, one month before the administrative hearing and endured significant changes post-review. (DN 22-1, at pp. 13-14). Without further development of the record with an updated opinion, Ikner argues that it is unclear whether she could maintain frequent handling, fingering, or reaching, as required by the jobs relied on during Step 5 of ALJ Harvin-Woode's analysis. (*Id.*).

It is the claimant's burden to prove she is disabled by providing a complete record throughout the administrative review process. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also* 20 C.F.R. § 416.912(a). While an ALJ has "a duty to develop the record," *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015), he or she also "has discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 275 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)). Where the record is insufficient to support a disability determination, an ALJ may recontact medical sources, request additional existing medical records, ask the claimant to undergo a consultative examination, or ask the claimant or others for more information. 20 C.F.R. § 416.920b(c)(i)-(iv). In other words, the regulations do not require an ALJ to refer a claimant to a

consultative specialist but, rather, grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.917).

Ikner's representative confirmed at the hearing that to the best of her knowledge the record was complete. (Tr. 852-53) And Ikner's representative did not question Ikner regarding the June 2018 shoulder surgery.[1] Despite this lack of emphasis on the shoulder surgery during the hearing, ALJ Harvin-Woode referenced such surgery several times in fashioning Ikner's RFC. First, she noted that at one week postoperative, Ikner reported she was doing okay, that her incision was healing well, that she had some swelling but not redness or ecchymosis, and that she was able to move all five phalanges without difficulty. (Tr. 23). Because of this information, ALJ Harvin-Woode found Ikner could occasionally reach overhead with the right upper extremity but could frequently reach in all other directions with the right upper extremity. (*Id.*). Later, ALJ Harvin-Woode again mentioned the June 2018 surgery, stating that even prior to her surgery Ikner was routinely noted to have normal muscle strength, which supported a reduction to light work. Because ALJ Harvin-Woode was provided sufficient medical evidence to determine Ikner's RFC, she acted appropriately within her discretion in not supplementing the physician opinion evidence.

---

[1] At one point during the hearing, counsel asked Ikner if she had any problems reaching in any direction with her right arm. (Tr. 861). Ikner responded: "Are you talking about before the surgery or now." After counsel clarified she was asking about Ikner's current abilities, Ikner appeared to demonstrate her reaching capabilities and stated she was still in therapy. (*Id.*). Other than this brief exchange, Ikner's representative did not address Ikner's surgery during the administrative hearing.

<u>ORDER</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is

**AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge

United States District Court

September 10, 2020

Copies:         Counsel of Record